**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

FRANK INTERLANTE,

           Plaintiff,

     v.

 

TARGET CORPORATION, et al.,

           Defendants.

_____

Civil No. 13-0368 (NLH/KMW)

**OPINION**

**APPEARANCES:**
David M. Cedar, Esquire
Cedar Law Firm, LLC
1908 Marlton Pike East
Cherry Hill, New Jersey 08003
    _Attorney for Plaintiff Frank Interlante_

Polly N. Phillippi, Esquire
Kantrowitz & Phillippi
1239 Parkway Ave.
Suite 101
Ewing, New Jersey 08628
    _Attorney for Defendant Target Corporation_

**HILLMAN, District Judge**

    This matter comes before the Court by way of Defendant Target Corporation's motion [Doc. No. 16] seeking summary judgment pursuant to Federal Rule of Civil Procedure 56 and to bar Plaintiff's expert report in this matter. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

    For the reasons expressed below, Defendant's motion for summary judgment will be denied.

I.    **JURISDICTION**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship between the parties and an amount in controversy in excess of $75,000. Plaintiff Frank Interlante is a citizen of the state of New Jersey. (See Am. Notice of Removal [Doc. No. 6] ¶ 5.) Defendant Target Corporation (hereinafter, "Target") is incorporated under the laws of the state of Minnesota and maintains its principal place of business in Minneapolis, Minnesota. (Id. ¶ 4.)  Therefore, Target is a citizen of the state of Minnesota.  See Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008) ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.") (citing 28 U.S.C. § 1332(c)).  Accordingly, complete diversity of citizenship exists between the parties in this action and it appears the amount in controversy is in excess of $75,000, exclusive of interest and costs.


II.   **BACKGROUND**

Plaintiff originally filed the complaint in this negligence action on December 14, 2012 in the Superior Court of New Jersey,

Law Division, Gloucester County.  (Pl.'s Compl. [Doc. No. 1] ¶
1; see also Def.'s Statement of Facts [Doc. No. 16]
(hereinafter, "Def.'s SOF"), ¶ 1.)[1]  Target subsequently removed
the action to this Court pursuant to 28 U.S.C. § 1441.  (Pl.'s
Compl. ¶ 8; Def.'s SOF ¶ 2.)  Plaintiff's complaint against
Target alleges that on June 15, 2012, Plaintiff, as a "business
invitee[,]" was "lawfully on the premises of Target" at Store
Number 1389,[2] located at 1900 Deptford Center Road, Deptford, New
Jersey for the purposes of exchanging items in the pharmacy
department.  (Pl.'s Compl. ¶¶ 1, 5; Def.'s SOF ¶¶ 1, 4A.)

       Plaintiff represents that while he was exiting the store
"via the designated right side exit door" and walking out,
another person was entering through the same exit door.  (Pl.'s

---

[1]   The facts are taken from Plaintiff's complaint and
Defendant's Statement of Facts submitted in support of the
present motion for summary judgment.  Plaintiff does not dispute
the "facts stated within [D]efendant's moving statement of
facts[.]"  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. [Doc. No.
17] (hereinafter, "Pl.'s Opp'n"), 2.)  However, Plaintiff
"contends that Target's conclusion about the facts used by
[Plaintiff's expert] is erroneous."  (Id.)
       To the extent that Plaintiff does not dispute the facts set
forth in Defendant's Statement of Facts, the Court deems them
admitted pursuant to Local Civil Rule 56.1(a).  (explaining that
"any material fact not disputed shall be deemed undisputed for
purposes of the summary judgment motion.").

[2]   Defendant Target Corporation is the owner and operator of
the Target store in question – Store Number 1389 – in Deptford,
New Jersey.

Compl. ¶ 6; Def.'s SOF ¶ 4B.)  "In an effort to avoid the entering person, [P]laintiff was forced to walk to the right along the exterior wall of the exit way."  (Pl.'s Compl. ¶ 6; see also Def.'s SOF ¶ 4B.)  Plaintiff alleges that when he "reached the right building corner adjacent to the exit walkway[,]" he "felt his right shoe and his right pants leg catch on something that cause him to trip, stumble, and fall forward."  (Pl.'s Compl. ¶ 6; see also Def.'s SOF ¶ 4B-D.) Although Plaintiff apparently tried to "arrest his fall by reaching out with his hands," Plaintiff was not able "to stop himself, falling to his knees and violently hitting the walkway surface with his hands" resulting in injury.  (Pl.'s Compl. ¶ 6.)

Plaintiff went to Target that day with Karen DiPol, and although she did not witness Plaintiff fall, Plaintiff went back into the store after his fall and told DiPol that "people were entering through the exit door and he had to go a little to the right and the curb caught his pants and shoe."  (Def.'s SOF ¶¶ 5A-5E.)  Plaintiff subsequently showed Glenn Denny, a Target employee, the location of where Plaintiff tripped and told Denny that he fell because the curb "grabbed [his] pants."  (Id. ¶¶ 6A-D.)  At the time of his fall, Plaintiff completed and signed

4

a Guest Incident Report wherein he described the incident by explaining "he caught his pant on cement and fell." (Id. ¶ 7.) A few days after his fall, Plaintiff received a telephone call from a Target employee at which time he gave a recorded statement. (Id. ¶ 4E.) Plaintiff reviewed the written version of his statement and verified that it set forth the information he provided during the telephone call. (Id.) In that recorded statement, Plaintiff again explained that "concrete broken out" at the corner of the building in the exit way "tugged [his] pants and got my two feet together and I went down." (Id. ¶ 8A.)

Plaintiff asserts a negligence claim against Target asserting that Target breached a duty of care owed to him, as a business invitee, by creating, causing and permitting to exist a dangerous and hazardous condition on the premises of the Target store in question. (Pl.'s Compl. ¶ 7.) Plaintiff alleges that due to this breach, Plaintiff suffered serious physical and personal injuries resulting in medical expenses, pain, suffering, inconvenience, embarrassment, lost wages, and other economic losses. (Id. ¶¶ 9-11.)

III. **DISCUSSION**

    A.   **Summary Judgment Standard**

    In the present motion, Target seeks the entry of summary judgment in its favor on Plaintiff's negligence claims. Specifically, Target "moves to bar [P]laintiff's expert report as a net opinion, and to dismiss [P]laintiff's Complaint for failure to prove negligence." (Def.'s SOF ¶ 10.) Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

    An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving

7

party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]"  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.

**B.  Net Opinions by Expert Witnesses**

Under New Jersey law, the so-called "net opinion rule" is essentially "a longstanding rule that dictates exclusion of expert testimony that contains 'bare conclusions, unsupported by factual evidence.'"  <u>City of Millville v. Rock</u>, 683 F. Supp. 2d 319, 328-29 (D.N.J. 2010) (citing <u>Holman Enter. v. Fidelity & Guar. Ins. Co.</u>, 563 F. Supp. 2d 467, 472 n.12 (D.N.J. 2008)

8

(quoting Buckelew v. Grossbard, 435 A.2d 1150, 1156 (N.J.
1981)).  However, in federal court, the admissibility of expert
witness testimony is governed by Federal Rule of Evidence 702,
and the "Supreme Court's decision in Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny."
See Thomas v. Cumberland Cnty., No. 09-1323, 2012 WL 3780452, at
*3 (D.N.J. Aug. 31, 2012).  Accordingly, courts in this district
have routinely observed that the "net opinion rule" is "neither
an evidentiary rule under the Federal Rules of Evidence nor a
factor in the Daubert analysis, but ... is merely a restatement
of the 'well-settled principle that an expert's bare conclusions
are not admissible under the fit requirement of Rule 702.'"  Id.
(citing Holman, 563 F. Supp. 2d at 472 n.12); see, e.g.,
Kachigian v. Berkshire Life Ins. Co. of Am., No. 09-6217, 2013
WL 1338288, at 11 (D.N.J. Apr. 1, 2013); Worrell v. Elliott &
Frantz, 799 F. Supp. 2d 343, 349 (D.N.J. 2011); Rock, 683 F.
Supp. 2d at 328.

IV.  **ANALYSIS**

    In this case, Plaintiff's negligence claim against Target
arises from the June 15, 2012 incident in which Plaintiff
allegedly tripped and fell near the exit door of Target's store
located in Deptford, New Jersey.  To prove his negligence claim

under New Jersey law,[3] Plaintiff must present proof of the following elements: (1) the existence of a duty of care, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages.  See Summers v. United States, No. 09-4920, 2012 WL 4062471, at *3 (D.N.J. Sept. 14, 2012) (citing Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1123 (N.J. 2009)).

Target, however, makes three primary arguments why summary judgment must be entered in its favor on Plaintiff's claims. Initially, Target argues that Plaintiff's expert report is an inadmissible net opinion and fails to satisfy the requirements of Federal Rule of Evidence 702.  (Def.'s Legal Argument [Doc. No. 16], (hereinafter, "Def.'s Arg."), 5-8.)  Target also contends that summary judgment for Target is proper here because there is no evidence that Target was negligent.  (Id. at 9-10.) Finally, Target asserts that it is entitled to summary judgment as a matter of law because there is no genuine issue of material fact.  (Id. at 11-12.)

**A.  Admissibility of Plaintiff's Expert Report**

Target advances two arguments in seeking to bar Plaintiff's

---

[3]    The Court sitting in diversity here must apply the substantive law of the state whose laws govern the action, in this case, New Jersey.  See Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1365 (3d Cir. 1993).

expert report here.  Target claims that Plaintiff's expert
report is an inadmissible "net opinion" and that it fails to
meet the requirements of Federal Rule of Evidence 702.  In this
case, Plaintiff relies on the July 31, 2012 expert report of
Charles J. Penza & Associates (hereinafter, the "Penza Report").
(Ex. I to Def.'s Mot. [Doc. No. 16]; Ex. 2 [Doc. No. 17-3] to
Pl.'s Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 17]
(hereinafter, "Pl.'s Opp'n").)

> *(1) The Penza Report Does Not Constitute a Net Opinion*

Target argues that the Penza Report "has no factual basis
and is, therefore, inadmissible."  (Def.'s Arg. 5; <u>see also</u> <u>id.</u>
at 5 (asserting the Penza Report "is completely lacking in the
necessary factual basis.")  Target primarily complains that the
"the 'facts' relied upon by [P]laintiff's expert are in direct
conflict with [P]laintiff's version of how his fall occurred."
(<u>Id.</u> at 6.)  Specifically, Target argues that although in "every
version of the incident given by [P]laintiff, he state[d] that
his pant leg caught on the corner of the building[,]" the Penza
Report "concluded that this did not occur."  (<u>Id.</u>)  According to
Target, then, the "'facts' as sworn to by [P]laintiff
[throughout discovery], are being cast aside by his expert,
apparently for what [the expert] feels is a more palatable

explanation for [P]laintiff's fall." (<u>Id.</u>)

Target points to one select portion of the Penza Report in order to demonstrate that the expert has "cast aside" and discarded "facts" here. That portion of the Penza Report reads as follows:

> I also inspected the blue jeans which Mr.
> Interlante was wearing on the date of the
> incident. My inspection of the right leg of the
> blue jeans revealed no evidence of the catch. Mr.
> Interlante had initially thought his pants got
> caught in the broken concrete of the raised curb.

(Penza Report 4.) Despite Plaintiff's repeated statements that his pant leg caught on the cement curb at the corner, Target argues, the Penza Report "finds no evidence of this, and dismisses this 'fact'." (Def.'s Arg. 6-7.) Thus, Target contends that the Plaintiff's expert was not in possession of the facts necessary to enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. (<u>Id.</u> at 7.) Because the Penza Report "disregards [P]laintiff's version of the accident," Target argues that it is a "blatant net opinion and should be ruled inadmissible." (<u>Id.</u>)

Plaintiff argues in opposition that the Penza Report is "based on reliable data, research, methods, and principles" in addition to "facts within [the expert's] own knowledge and supported by the proofs of the case." (Pl.'s Opp'n 10.)

Specifically, Plaintiff points out that the Penza Report relies on the following facts and data: (1) Plaintiff's description of the fall; (2) the independent inspection of Target's premises by the expert, Charles Penza, including the measurements, observations, and photos Penza made with respect to "the raised curb and its projection out from the wall of the exit walkway," including that the curb's color and broken, chipped, and dilapidated appearance; and (3) Penza's experience and "reliable research into the requirements of the applicable building codes and industry standards." (Id. at 12.)

Plaintiff also challenges Target's contention that the Penza Report only considered facts that contradict Plaintiff's version of how his fall occurred. (Id.) Plaintiff asserts that the Penza Report does not conclude that "Mr. Interlante ... changed his mind as to how the fall occurred[,]" nor does it "indicate that Penza opined that the fall occurred some other way than" that described in the consistent testimony by Plaintiff. (Id. at 13.) According to Plaintiff, Target incorrectly focuses only on the use of the word "initially" to describe what Plaintiff originally speculated caused him to trip, i.e., his pant leg and shoe got "caught" on the concrete curb. (Id.) Plaintiff points out that a careful reading of the

13

Penza Report reflects that Penza consistently observed and considered Plaintiff's testimony that his right pant leg and shoe got caught on the raised curb.  (Id.)

In this instance, Target, as the moving party, bears the burden of demonstrating the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law.  When challenging the admissibility of the Penza Report as a net opinion, Target must therefore establish that the Penza Report constitutes a bare conclusion, unsupported by factual evidence.  Here, Target has failed to sufficiently demonstrate that the conclusions reached in the Penza Report are unsupported by the facts of this case.

To the extent Target attempts to depict the Penza Report as "disregarding" Plaintiff's version of the incident, "casting aside" Plaintiff's facts, or "dismissing" Plaintiff's facts, the Court finds this argument to be a complete mischaracterization. The Court's review of the Penza Report makes clear that Penza expressly took into account Plaintiff's description of the fall no less than five times in developing his expert opinion.  (See, e.g., Penza Report 2 ("As Mr. Interlante reached the right building corner, he felt his right shoe and his right pants leg catch on something that caused him to trip, stumble, and fall

14

forward."); id. at 2-3 ("After the incident, Mr. Interlante determined that his right shoe and pants leg had caught on the raised 'curb' area which paralleled the right wall and projected beyond the right building corner."); id. at 3 ("The Guest Description apparently states, 'He was going out of the store, he caught his pants on broken concrete and fell.'  The cause of the incident was 'broken corner of concrete.'"); id. at 3 ("Mr. Interlante confirmed the location of his trip and fall as the right building corner where he angled to his right and he felt his right shoe and his right pants leg catch on something that caused him to trip, stumble, and fall forward."); id. at 4 ("Mr. Interlante turned and angled to his right, his right shoe caught on the projecting edge of the raised curb and he tripped.").

Target's contention that the Penza Report contradicts Plaintiff's version of the facts relies completely on three sentences contained in the Report: "I also inspected the blue jeans which Mr. Interlante was wearing on the date of the incident.  My inspection of the right leg of the blue jeans revealed no evidence of the catch.  Mr. Interlante had initially thought his pants got caught in the broken concrete of the raised curb." (Penza Report 4.)  Target's argument that the expert ignored the facts here misses the mark.  The Penza

Report, in full consideration of Plaintiff's testimony that he believed his pants leg got caught on something, simply demonstrates that Penza inspected the pants Plaintiff was wearing at the time of his fall and found no evidence to support that the pants themselves got caught on something.  Simply because an expert cannot find evidence to support a particular belief or assumption made by a witness does not convert this into an instance where an expert witness is disregarding facts in order for the expert to present his own, "more palatable explanation for" the fall as Target alleges.

Further, the Penza Report makes clear that Penza also examined Plaintiff's shoe which Plaintiff similarly testified he believed got caught leading to his fall.  The Report reflects that this examination "revealed a slight scrape at the right front of the right shoe." (Id. at 4.)  Ultimately, having reviewed relevant building and safety codes, safety publications regarding slips, trips, and falls, and safety engineering, in addition to interviewing Plaintiff and inspecting the premises where Plaintiff fell, the Penza Report concluded that the broken, chipped raised concrete curb constituted an inherent tripping hazard that was unperceived, unexpected, unsafe, and caused Plaintiff's fall.  (Id. at 7-9.)  Penza also explained

16

that based on his experience and familiarity with trip and fall cases, and the mechanism employed by the body when walking, it was "easy to visualize how the 'catch' suffered by Mr. Interlante was caused by an interruption of the forward swing of his foot which resulted in his tripping and falling forward." (Id. at 9.)

While an expert's opinion must be reliable, there is no requirement that the expert's opinion "be grounded in direct evidence[.]" May v. Atlantic City Hilton, 128 F. Supp. 2d 195, 198 (D.N.J. 2000). "Circumstantial evidence, defined as 'a preponderance of probabilities according to the common experience of mankind,' ... may also serve as the basis for conclusions as to causation." Id. at 199 (citing Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 274-75, 139 A.2d 404, 411 (1958); Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 74 (3d Cir. 1996)). That is to say, "'[causation] may rest upon [a] legitimate inference, so long as the proof will justify a ... logical inference as distinguished from mere speculation.'" May, 127 F. Supp. 2d at 199 (citing Kulas v. Public Serv. Elec. & Gas Co., 41 N.J. 311, 318, 196 A.2d 769, 773 (1964).

Here, the Court has determined that the conclusions reached

17

in the Penza Report rest upon logical inferences gleaned from Penza's review of the Guest Incident Report, an interview with Plaintiff, an inspection and examination of the premises and Plaintiff's clothing at the time of the incident, and the relevant building and safety codes, and safety publications. Therefore, the Penza Report clearly constitutes more than a mere net opinion and cannot be excluded on the basis that it unsupported by factual evidence.  The parties do not dispute the location of where Plaintiff fell, or manner in which he was forced to move to the right upon exiting the Target store in question just before he fell.  The Penza Report is consistent with the information contained in the Guest Incident Report to the extent both identify the broken concrete curb as a tripping hazard which caused Plaintiff's fall.  Cf. May, 127 F. Supp. 2d at 199.  Target is therefore not entitled to summary judgment on that basis.[4]

---

[4]     Nothing in this analysis precludes Defendant from utilizing any factual inconsistencies in cross-examining Plaintiff's expert or any other witness, including Plaintiff himself.  See, e.g, Daubert, 509 U.S. at 596 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414-15 (3d Cir. 2002) (observing that "[a] party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for

*(2)  Target's Daubert Challenge Fails*

Target further argues that Plaintiff's expert report is inadmissible under Federal Rule of Evidence 702 and Daubert. Specifically, Target contends that the Penza Report "is clearly not tied to the facts of the case" because the Report "disregards [P]laintiff's own version of how his fall occurred." (Def.'s Arg. 8.)  According to Target, where "an expert disregards the facts as sworn to by the plaintiff, the testimony is not based on reliable information and must not be permitted." (Id.)  Under Daubert, the district court's role is to act as a gatekeeper and to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589, 597 (1993).  To be admissible as expert testimony, (1) the proffered witness must be an expert, (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge, and (3) the testimony must assist the trier of fact.  FED. R. EVID. 702.  A Daubert hearing may be held when there is an objection to the admission of expert testimony.  The decision to hold a Daubert hearing rests

_____

his opinion can highlight those weaknesses through effective cross-examination.").

in the sound discretion of the district court.  Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999).

This argument, brought in the guise of Rule 702 Daubert challenge, is actually a rehashing of the exact same argument Target proffered in support of its contention that the Penza Report is a net opinion.  Put simply, Target again claims that Penza ignored Plaintiff's version of the manner in which the fall occurred and contends that this leads to the exclusion of the Penza Report in its entirety because the Report is not tied to the facts of the case and is not reliable.  For the reasons set forth more fully above, it is clear that the Penza Report is tied to the facts of the case and cannot be excluded on that basis.  This is the only argument Target advances to exclude the Report under Rule 702, and it fails here.  Accordingly, there is no adequate reason to exclude the Penza Report under Rule 702, and Target is not entitled to summary judgment on that basis.

**B.   Target is Not Entitled to Summary Judgment**

Target's remaining arguments assume that Plaintiff's expert report will be excluded, and therefore Target argues there is no evidence to show that any action or inaction on the part of Target caused Plaintiff's injury.  (Def.'s Arg. 10.)  According to Target, Plaintiff's accident was the result of action by

third parties over whom Target had no control.  See id. ("Third parties over whom defendant had no control were entering the store through an exit.  This action caused [P]laintiff's reaction of moving to the right which caused his fall." Plaintiff's own testimony and Plaintiff's admissible expert report create a genuine dispute of material fact with respect to the cause of Plaintiff's fall.  While Target takes the position that it was caused by the action of third-parties, Plaintiff has come forward with sufficient evidence to contradict that offered by Target here, and summary judgment cannot be granted in Target's favor at this time.


**V.**   **CONCLUSION**

For the foregoing reasons, Defendant Target's motion for summary judgment is denied.  An Order consistent with this Opinion will be entered.


Dated: June 26, 2014          s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.